IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SANJAY BHARDWAJ,

    Plaintiff,

v.

ANUPAMA PATHAK, *et al.*,

    Defendants.

No. C 13-3807 SI

**ORDER GRANTING DEFENDANTS' MOTION TO DISMISS WITHOUT LEAVE TO AMEND**

Defendants' motions to dismiss are scheduled for a hearing on November 15, 2013. Pursuant to Civil Local Rule 7-1(b), the Court determines that the matters are appropriate for resolution without oral argument, and VACATES the hearing. For the reasons set forth below, the Court GRANTS the motions to dismiss without leave to amend.

**BACKGROUND**

On August 16, 2013, plaintiff Sanjay Bhardwaj filed this *pro se* action against his ex-wife, Anupama Pathak (formerly Anupama Bhardwaj), and numerous other parties involved in plaintiff's ongoing state court dissolution proceedings, *Bhardwaj v. Bhardwaj* (Alameda County Sup. Ct. No. FF08380050). According to the complaint and the state court records submitted by defendants,[1]

---

[1] This Court may take judicial notice of documents in a Rule 12(b)(6) motion where those documents are "central to a plaintiff's claim" and where those documents, while not physically attached to plaintiff's complaint, are referenced in the complaint. Where judicial notice is taken for this limited purpose, such notice does not convert the motion to dismiss to a summary judgment motion. *See Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994) ("[W]e hold that documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered in Ruling on a 12(b) motion to dismiss.").

Bhardwaj and Pathak were married for approximately 19 years, and dissolution of the marriage occurred on November 9, 2009. Docket No. 18, Ex. B, F. The Superior Court reserved jurisdiction to determine financial issues such as division of marital assets and child and spousal support, and two different Superior Court judges held separate trials in October 2009 and March 2010 on those matters. The first trial was presided over by Judge Dan Grimmer, who issued a decision on February 10, 2010, finding, *inter alia*, that plaintiff was not entitled to permanent spousal support at that time and that plaintiff had intentionally understated his earnings during the trial, for which he was sanctioned $1,500. *Id*. Ex. D. The second trial was presided over by Judge Stephen Pulido, who is named as a defendant in this lawsuit. *Id*. Ex. E. The second trial addressed the remaining financial issues, including plaintiff's request for a modification of Judge Grimmer's permanent spousal support decision. Judge Pulido issued a decision on July 2, 2010, ordering that the family residence in Fremont and other houses in Arizona and Texas be sold and that the proceeds be divided. *Id*. Judge Pulido modified the spousal support decision, awarding plaintiff $3,500 per month. Judge Pulido also sanctioned plaintiff $15,000 for "conduct . . . [which] frustrated the policy of the law to promote settlement of litigation and increased the costs of litigation in this case." *Id*. at 69.[2] The Superior Court issued a single judgment on September 30, 2010, "on reserved issues arising out of the[] two separate proceedings under the terms of Judge Grimmer's Statement of Decision issued on February 10, 2010 and under the terms of Judge Pulido's Statement of Decision issued on July 2, 2010." Docket No. 33, Ex. A. The September 30, 2010 judgment provided, *inter alia*, that "[t]he residence and real property commonly known as 701 Bodega Court, Fremont, CA, shall be listed for sale forthwith and sold as soon as possible. The net proceeds from the sale of the family residence shall be divided equally between the parties." *Id*. at Attachment ¶ 3. The judgment also states that "[t]he court shall reserve jurisdiction over the sale of the Fremont property." *Id*.

Plaintiff appealed the September 30, 2010 judgment, as well as a January 7, 2011 order denying a motion for a new trial. Docket No. 18, Ex. F at 5. In an unpublished decision filed February 28, 2012,

---

[2] In August 2011 and February 2012, plaintiff filed applications to disqualify Judge Pulido. *Id*. Ex. G & H. Judge Pulido denied both applications. *Id*. On October 26, 2012, plaintiff filed a Challenge for Cause as to Judge Pulido. *Id*. Ex. I. Judge Alesia Jones of the Superior Court denied that challenge in a decision dated December 11, 2012. *Id*.

the Court of Appeal of the State of California, First Appellate District, Division Five, affirmed the Superior Court on all grounds. *Id*. The appellate court also sanctioned plaintiff $60,000 for filing a frivolous appeal, noting that "virtually every argument appellant makes indisputably lacks merit," that Pathak had submitted a declaration "strongly indicat[ing] that appellant is pursuing these appeals for purposes of delay," and that "appellant has already been sanctioned first by Judge Grimmer and then by Judge Pulido without any noticeable effect." *Id*. at 31. The appellate court also ordered that a copy of its decision be forwarded to the California State Bar for investigation and possible discipline because plaintiff is a licensed attorney who represented himself in the appeal. *Id*. at 32. According to defendant Pathak, plaintiff sought rehearing in the Court of Appeal, petitioned for review by the California Supreme Court, and petitioned for certiorari in the United States Supreme Court; all requests were denied. Docket No. 16 at 4:20-23.

On October 3, 2012, plaintiff filed another appeal of various Superior Court orders. Docket No. 18, Ex. J. In an order filed February 17, 2013, the Court of Appeal granted Pathak's motion to dismiss the appeal, finding that the appeal was untimely as to certain orders and that other orders were not appealable. *Id*. Plaintiff then sought a writ of mandate from the appellate court, which was denied. *Id*., Ex. K. Plaintiff also filed a petition for review with the California Supreme Court and filed a petition for certiorari with the United States Supreme Court; both were denied. *Id*., Ex. L-N.

Judge Pulido issued an order on March 1, 2013, in which he, *inter alia*, sanctioned plaintiff an additional $45,000 for continued misconduct and ordered plaintiff not to communicate with the buyers of the Fremont home. *Id*. Ex. O. That order also stated that "[d]ue to his own conduct, Mr. Bhardwaj was removed entirely from the sales process related to this property pursuant to the orders of 10/10/2012 attached hereto as Exhibit 1 and incorporated herein." *Id*. at ¶ 11. The October 10, 2012 order, in turn, provided that "[i]n the event that either party [did] not cooperate in the execution of contracts or documents necessary to list and sell the properties immediately, or to effectuate any other order set forth herein, the other party [could] submit such contracts or documents by ex parte application to be executed by the clerk of court on behalf of the non-cooperative party." Docket No. 31, Ex. B ¶ 17. The October 10, 2012 order also appointed defendant Elaine White as "the Court's Evidence Code § 730 expert to investigate, report and testify regarding the sale of the parties' real property in Fremont, CA," and

3

directed that money from the sale of the Texas and Fremont properties be transferred into escrow to close the sale of property in Arizona. *Id*. ¶¶ 13, 16.

In or about February 2013, defendant First American Title Company served as the escrow holder for the court-ordered sale of the Fremont property from plaintiff and Pathak, as sellers, to defendant Brinda Kaur Bal, as buyer. Docket No. 34, Ex. C. On May 29, 2013, First American filed a complaint in interpleader against plaintiff and Pathak, *First American Title Company v. Pathak and Bhardwaj* (Alameda County Sup. Ct. No. HG13681389). *See id*. The interpleader complaint alleges that First American is in possession of $904,061.39 in funds as a result of an escrow for the sale of the real property commonly known as 701 Bodega Court, Fremont, California 94539. *Id*. ¶ 6. The interpleader complaint further alleges that "[First American] is informed and believes and based thereon alleges that PATHAK requested of the Court in the [family court] LITIGATION that money from the sale of the Subject Property or the Texas property be transferred into an escrow for the sale of the Arizona property, which property [First American] is informed and believes and based thereon alleges is currently 'under water.' [First American] is informed and believes and based thereon alleges that the Court thereafter granted PATHAK's request. Plaintiff is holding $904,061.39 in escrow in anticipation that said funds will potentially be transferred to a sale escrow of the Arizona property." *Id*. ¶ 9. The interpleader complaint alleges that Pathak and Bhardwaj "have made conflicting demands to the escrow funds being held. These claims are adverse and conflicting and have been made without [First American's] collusion. [First American], as escrow holder, is unable to determine the validity of these claims." *Id*. ¶ 10.

On or about July 2, 2013, Bhardwaj filed general and special demurrers to the interpleader action. Docket No. 34, Ex. D. On or about July 26, 2013, Judge Brad Seligman of the Alameda County Superior Court consolidated the dissolution action with the interpleader action. *Id*. Ex. G. On August 26, 2013, Bhardwaj filed a notice of removal of the consolidated interpleader and dissolution action. *Id*. Ex. H. *First American Title Company v. Pathak and Bhardwaj*, C No. 13-3947 SI.[3] First

---

[3] The removed action was originally assigned to Judge White. On November 6, 2013, Judge White issued a *Sua Sponte* Judicial Referral for Purposes of Determining Relationship of Cases. That same day, this Court determined that the removed action is related to this case, and pursuant to Civil

4

American's motion to remand that case is scheduled for a hearing on December 13, 2013.

In an order filed July 2, 2013, Judge Seligman of the Alameda County Superior Court declared plaintiff a vexatious litigant. Docket No. 17, Ex. A. Judge Seligman found, *inter alia*, that "it is clear that respondent has repeatedly filed unmeritorious motions, pleadings or other papers and has engaged in frivolous litigation tactics." *Id*. at 3.

Plaintiff filed this lawsuit a little over one month later. In addition to suing his ex-wife, the defendants include (1) Alameda County Superior Court Judge Pulido; (2) Alameda County Superior Court Commissioner Thomas Nixon, who also presided over the dissolution proceedings; (3) the Alameda County Superior Court; (4) Paul Thorndal, Esq., who represented defendant Pathak in the dissolution proceedings; (5) Wald & Thorndal P.C., defendant Thorndal's law firm; (6) Chamandeep Grewal, Esp., who is defendant Pathak's current family law attorney; (7) Johal Law, A.P.C., Grewal's law firm; (8) Brindha Kaur Bal and Sandeep Singh Dhami, the current owners of the Fremont property; (9) First American Title Company, the escrow holder for the sale of the Fremont home; (10) NRT West, Inc. (sued as Coldwell Banker Residential Brokerage) and its sales associate Elaine White, who was appointed by Judge Pulido under California Evidence Code § 730 to assist in the sale of the Fremont home; and (11) the Alameda County Sheriff Gregory Ahern and "John Doe 1, Levying Officer" of the Alameda County Sheriff's Office, who allegedly evicted plaintiff from the Fremont home.[4]

The complaint contains numerous factual allegations relating to the state court dissolution proceedings. The complaint alleges that the Superior Court "improperly discounted" defendant Pathak's income when calculating spousal support, and that after the California Court of Appeal affirmed the Superior Court's ruling, "[t]lhe trial court judge, Stephen M. Pulido, took as a hunting license to avenge the appeal complaint (which indicated utter lack of following of state law on his part) and re-litigate almost all aspects of tried matter. This was done in an *ex parte* manner, mostly with no hearings, without a trial on triable issues and with no issuance of statement of decision, lending any appellate

---

Local Rule 3-12, the removed action was reassigned to this Court.

[4] It is not clear from the docket whether defendant Ahern or the Levying Officer were properly served with process, and neither has appeared in the case. In any event, for the reasons stated in this order, the finds that plaintiff's claims against these defendants are barred and fail to state a claim.

review futile." Compl. at 5-6. The complaint alleges that Judge Pulido "was predisposed and biased to take possession of the marital home away from" plaintiff, *id*. at 7, and that "[t]he Alameda County Superior Court illegally removed Sanjay Bhardwaj from his home, which was also extra-judgment." *Id*. at 15. The complaint alleges that defendants Pulido and Thorndal doctored court transcripts and that "[t]hese acts are material and prejudicial and lead to proximate causation of damages as the Court of Appeal latched on these errors and found it material to its decision filed 2.28.12." *Id*. at 18. The complaint alleges that Judge Pulido and Thorndal have engaged in an "enterprise to obstruct justice," *id*. at 20, that Judge Pulido has "made several fundamental mistakes of law," *id*. at 22, and that all of the defendants have "acted intentionally to deny wrongfully the use and possession of Plaintiff's home and Sanjay Bhardwaj, Trustor and Trustee's right to prevent the sale or encumbrance of any residence in which he resides." *Id*. at 25. The complaint seeks money damages and injunctive relief in the form of vacating the September 30, 2010 state court judgment and a declaration that all subsequent orders by Judge Pulido are "null and void with no legal force." *Id*. at 68. The complaint alleges various federal civil rights violations under 42 U.S.C. § 1983, a RICO claim, and a number of state tort violations.

Now before the Court are defendants' motions to dismiss. Plaintiff has filed oppositions to all of the pending motions.

**LEGAL STANDARDS**

**I.      Rule 12(b)(1)**

A motion to dismiss under Rule 12(b)(1) of the Federal Rules of Civil Procedure for lack of subject matter jurisdiction may either "attack the allegations of the complaint or may be made as a 'speaking motion' attacking the existence of subject matter jurisdiction in fact." *Thornhill Publ'g Co. v. Gen. Tel. and Elec*., 594 F.2d 730, 733 (9th Cir. 1979) (citing *Land v. Dollars*, 330 U.S. 731, 735 n. 4. (1947)). Where the jurisdictional issue is separable from the merits of the case, the Court need only consider evidence related to the jurisdiction issue, and rule on that issue, resolving factual disputes as necessary. *Id*. (citing *Berardinelli v. Castle & Cooke, Inc*., 587 F.2d 37 (9th Cir. 1978)).

In deciding a Rule 12(b)(1) motion that mounts a factual attack on jurisdiction, "no presumption of truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not

preclude the trial court from evaluating for itself the merits of jurisdictional claims. Moreover, the plaintiff will have the burden of proof that jurisdiction does in fact exist." *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977).

## II.     Rule 12(b)(6)

Under Federal Rule of Civil Procedure 12(b)(6), a district court must dismiss a complaint if it fails to state a claim upon which relief can be granted. To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). This "facial plausibility" standard requires the plaintiff to allege facts that add up to "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although courts do not require "heightened fact pleading of specifics," *Twombly*, 550 U.S. at 544, a plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do," *id*. at 555. The plaintiff must allege facts sufficient to "raise a right to relief above the speculative level." *Id.*

In deciding whether the plaintiff has stated a claim, the Court must assume that the plaintiff's allegations are true and must draw all reasonable inferences in his or her favor. *Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987). However, the court is not required to accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *St. Clare v. Gilead Scis., Inc. (In re Gilead Scis. Sec. Litig.)*, 536 F.3d 1049, 1055 (9th Cir. 2008). Moreover, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678.

If the Court dismisses a complaint, it must decide whether to grant leave to amend. The Ninth Circuit has "repeatedly held that a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (citations and internal quotation marks omitted).

7

**DISCUSSION**

Defendants move to dismiss the complaint on numerous grounds. Defendants contend that the complaint is unintelligible, and to the extent that plaintiff's allegations can be discerned, plaintiff's claims are barred in whole or in part on numerous grounds, including the *Rooker-Feldman* doctrine, the *Younger* abstention doctrine, judicial and quasi-judicial immunity (as to certain defendants), Eleventh Amendment immunity (as to certain defendants), and the litigation privilege found at Cal. Evid. Code § 47. Defendants also contend that plaintiff's claims fail because plaintiff has not sufficiently alleged the elements of those claims. For example, the private defendants contend that the Section 1983 claims against them must be dismissed because they are not public actors. In response to defendants' motions, plaintiff asserts that the complaint puts defendants on "fair notice" of his claims, and that this Court has jurisdiction because, *inter alia*, plaintiff is challenging acts that were performed in excess of Judge Pulido's jurisdiction.

The Court finds that plaintiff's claims are barred for multiple reasons. First and foremost, federal district courts, as courts of original jurisdiction, may not review the final determinations of state courts. *See D.C. Court of Appeals v. Feldman*, 460 U.S. 462, 482-86 (1983); *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 415-16 (1923) (district courts may not exercise appellate jurisdiction over state courts); *Doe & Assoc. Law Offices v. Napolitano*, 252 F.3d 1026, 1029-30 (9th Cir. 2001); *Olson Farms, Inc. v. Barbosa*, 134 F.3d 933, 936 (9th Cir. 1998). Accordingly, under the *Rooker-Feldman* doctrine,

> [i]f claims raised in the federal court action are "inextricably intertwined" with the state court's decision such that the adjudication of the federal claims would undercut the state ruling or require the district court to interpret the application of state laws or procedural rules, then the federal complaint must be dismissed for lack of subject matter jurisdiction.

*Bianchi v. Rylaarsdam*, 334 F.3d 895, 898 (9th Cir. 2003) (citing *Feldman*, 460 U.S. at 483 n.16 & 485). The *Rooker-Feldman* doctrine bars an action in which a party essentially asks the federal court to review the state court's decision and afford that party the same remedy he was denied in state court. *Id.* The *Rooker-Feldman* doctrine applies even when the state court judgment is not issued by the highest state court, *see Worldwide Church of God v. McNair*, 805 F.2d 888, 893 n.3 (9th Cir. 1986), and when federal constitutional issues are at stake, *see Branson v. Nott*, 62 F.3d 287, 291-92 (9th Cir. 1995); *Mullins v. Oregon*, 57 F.3d 789, 792 (9th Cir. 1995). Here, plaintiff seeks to have this Court void numerous state

8

court decisions, including the September 30, 2010 judgment that was affirmed by the California Court of Appeal. Such relief is foreclosed by the *Rooker-Feldman* doctrine. Relatedly, the Court cannot adjudicate plaintiff's claim that the sale of the Fremont property was improper and must be set aside, because the sale was conducted pursuant to state court orders and is inextricably intertwined with those state court orders.

Second, pursuant to the doctrine set out in *Younger v. Harris*, 401 U.S. 37 (1971), and its progeny, this Court must abstain from proceeding with this case due to the ongoing state court proceedings. Under the *Younger* doctrine, absent extraordinary circumstances, a federal court should abstain from proceeding with a case if: (1) there is an on-going state court proceeding; (2) there is an important state interest at issue; and (3) there is an adequate opportunity for plaintiffs to litigate the federal claims in the state court proceeding. *See Younger*, 401 U.S. at 40 (criminal proceedings only); *Middlesex County Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 432 (1982) (outlining the three *Younger* criteria); *Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1 (1987) (extending *Younger* doctrine to civil proceedings). While the Court will address the propriety of plaintiff's removal of the state court interpleader/dissolution action in that separate case, there is no dispute that the dissolution of the marital assets, and in particular the sale of the Fremont home, has been and continues to be the subject of litigation in the state courts.

Third, many if not all of plaintiff's state claims are barred by the litigation privilege codified at California Civil Code § 47. That privilege "applies to any publication required or permitted by law in the course of a judicial proceeding to achieve the objects of the litigation, even though the publication is made outside the courtroom and no function of the court or its officers is involved." *Jacob B. v. County of Shasta*, 154 P.3d 1003, 1007 (Cal. 2007) (citation omitted). The privilege bars all tort causes of action other than malicious prosecution and applies to any communication "(1) made in judicial or quasi-judicial proceedings; (2) by litigants or other participants authorized by law; (3) to achieve the objects of the litigation; and (4) that have some connection or logical relation to the action." *Silberg v. Anderson*, 50 Cal. 3d 205, 219-220 (1990). The allegations of the complaint show that plaintiff's state claims are based on privileged communications. For example, the claims against Pathak's current and former attorneys are all based on actions and communications that those lawyers made in the state court

9

1 dissolution proceedings in the course of representing Pathak. Similarly, the claims against defendant
2 White arise out a declaration that she filed in the state court proceedings.

3 Fourth, the claims against Judge Pulido, Commissioner Nixon and Elaine White are barred by
4 immunity. A state judge is absolutely immune from civil liability for damages for acts performed in his
5 judicial capacity. *See Pierson v. Ray*, 386 U.S. 547, 553-55 (1967) (applying judicial immunity to
6 actions under 42 U.S.C. § 1983); *see also Curry v. Castillo (In re Castillo)*, 297 F.3d 940, 952 (9th Cir.
7 2002) (court clerks performing functions closely associated with the judicial process are entitled to
8 absolute immunity). Here, the complaint challenges acts by defendants Pulido and Nixon in presiding
9 over plaintiff's dissolution proceedings, as well as acts by White in her capacity as a court-appointed
10 expert, and thus those defendants are sued for acts performed in a judicial or quasi-judicial capacity.
11 Judges are "not liable to civil actions for their judicial acts, even when such acts are in excess of their
12 jurisdiction, and are alleged to have been done maliciously or corruptly." *Stump v. Sparkman*, 435 U.S.
13 349, 356 (1978). The two limited exceptions to this rule are where the judicial officer did not perform
14 a judicial act, or where the officer acts in the "clear absence of all jurisdiction." *Id*. at 357. Here, the
15 complaint does not allege that any judicial defendant engaged in an act that was not judicial in nature;
16 indeed, the complaint repeatedly challenges numerous judicial acts such as court orders or the manner
17 in which hearings were conducted. Although the complaint alleges that the judicial defendants "acted
18 in clear absence of jurisdiction," the complaint then proceeds to challenge numerous judicial and quasi-
19 judicial acts.[5]

20 The Court finds that leave to amend would be futile, and accordingly GRANTS defendants'
21 motions to dismiss this action without leave to amend. The Court also informs plaintiff that any future
22 federal actions filed in this Court and arising out of the dissolution proceedings and/or related to the sale
23 of the Fremont home will be deemed "related" to this case and assigned to this Court.

---

28 [5] Each of plaintiff's claims also fails to state a claim for the reasons articulated in defendants' papers.

10

**CONCLUSION**

For the foregoing reasons, the Court GRANTS defendants' motions to dismiss the complaint without leave to amend. Docket Nos. 11, 21, 25, 29, 32, & 35.

**IT IS SO ORDERED.**

Dated: November 7, 2013

SUSAN ILLSTON
United States District Judge